In the Matter of TOM PAPOUTSIS, Doing Business as MANOR INN, Petitioner, v. STATE LIQUOR AUTHORITY, Respondent.

First Department, July 1, 1969.

*Theodore M. Wolkof* for petitioner.

*Peter A. Malia* of counsel (*Samuel Roberts,* attorney), for respondent.

McGIVERN, J. The petitioner in this article 78 proceeding is Tom Papoutsis, who emigrated from Greece in the year 1955, becoming a citizen in 1960. After many years wherein he worked as a bus boy and a waiter, and by dint of savings and family borrowings and a King-size mortgage, he opened up a small restaurant, primarily dedicated to the sale of alcoholic beverages, on the premises. The location was 1487 St. Nicholas Avenue, Manhattan, duly licensed by the respondent State Liquor Authority on August 24, 1964. Thereafter, the business became viable

through the long hours of the petitioner, aided by his wife, nee Cecilia Gonzalez, who in order to help in the store, would hire a baby sitter for Tom Papoutsis, Jr. There has never been a violation on the store, although as Tom says in his petition, "the neighborhood has changed and the patronage grown more difficult."

Come the fall of 1967, the United States Treasury Department commenced a tax audit of the petitioner's personal income tax returns and the petitioner brought in his accountant. In January-February, 1968, a Revenue Agent visited the premises on three occasions. Lengthy discussions ensued between the agent and the accountant — in which the petitioner took no part. On the last occasion, Tom's accountant instructed him to get $500 "right now", plus $75 for his fee. Tom dispatched his wife to the bank and she withdrew $500 from the child's trust account. Tom left the money on the top of a box, the agent took the money and the accountant said to Tom, "Don't worry about anything, I'll see you tomorrow."

On the morrow Tom was arrested and hailed before the United States District Court. He was indicted together with his accountant, for violating subdivisions (b) and (f) of section 201 of title 18 of the United States Code. There were three counts in the indictment. Tom pleaded to the third, essentially, the giving of an unlawful gratuity, a misdemeanor. The court gave him a suspended sentence and placed him on probation for two years. The Authority, after a hearing, on December 4, 1968, found the petitioner's conduct to have been so improper as to warrant cancellation of his license, and in fact his license has been canceled, effective December 12, 1968.

Before us solely is the question of excessiveness of sentence, a most delicate problem.

We recognize that when a reviewing court steps in to revise downward the penalty imposed by an administrative agency, the occasions should be like Angels' visits, few and far between. This seems to be one of them. Here we have an immigrant Greek, a good family man, who with the help of his wife, by dint of grinding toil has built up a small but continuing business in an area on the downgrade. Relying on the advice of his accountant, a professional man, regarded by him with the awe, which in the old country, one accords "a professor," he placed a gratuity in the way of an ostensibly acquiescent and co-operative Federal agent, who accepted it. Technically, what he did was a misdemeanor (U. S. Code, tit. 18, § 201, subd. [f]; New York Penal Law, § 200.30), unrelated to the actual conduct of the licensed premises. In the Mediterranean lands, from whence

the petitioner springs, it was " Baksheesh ", one of the accepted folkways.

It seems unduly harsh and out of tune with Manhattan realities to destroy this industrious Greek and take away his rice bowl because of one misstep in an otherwise creditable life characterized by nothing but hard and unremittingly menial labor since his arrival in America. The punishment as it now stands works a practical forfeiture of his life savings. Under the exceptional circumstances of this case, this seems to be disproportionate to the offense and is jolting to one's sense of fairness. (See *Matter of Mitthauer* v. *Patterson,* 8 N Y 2d 37.)

The cases are not few wherein attorneys have fallen from grace and yet have not been disbarred, although as members of a public profession, an elite group, they are the custodians of a code commonly regarded as the strictest in society. We cannot equate this immigrant of humble origin with the expectations of such a code, or make him pay a more fearful price, even though he acted on professional advice. And cancellation would be the tantamount of disbarment.

Although in no way condoning the deed, we do not think the heavens will fall or society be any the worse if the petitioner is restored to his business after a suitable period wherein his license is suspended as a chastening reparation for his offense. We regard a reasonable period of suspension as condign satisfaction and more proportionate to the offense. The power to so act is free from doubt. (CPLR 7803, subd. 3; *Matter of Mitthauer* v. *Patterson, supra*; *Matter of McGinnis' Rest.* v. *Rohan,* 6 A D 2d 115, affd. 6 N Y 2d 770; *Matter of Garcia & Co.* v. *State Liq. Auth.,* 30 A D 2d 949.)

Accordingly, under the special circumstances of this case, the determination of the Authority should be modified, on the law and in the exercise of discretion, so as to mitigate the punishment from cancellation to suspension and as so modified, the matter should be remitted to the Authority for reconsideration and the imposition of a lesser penalty, and otherwise confirmed, without costs and without disbursements.

TILZER, J. (dissenting). The question of the excessiveness of a sentence is indeed " a most delicate problem." Nevertheless, while we now have the power to review the measure of discipline imposed by an administrative body, we may not substitute our discretion for that of the body with whom discretion has been lodged by the Legislature. Our inquiry as to the measure of a penalty is limited to a determination as to whether the punishment imposed " is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's

sense of fairness '' and thus constitutes an abuse of discretion on the part of the administrative agency. (*Matter of Stolz* v. *Board of Regents*, 4 A D 2d 361; *Matter of McGinnis' Rest.* v. *Rohan*, 6 A D 2d 115.) We cannot say that the cancellation of petitioner's license was arbitrary, capricious or unreasonable. The realities of Manhattan or elsewhere compel the conclusion that petitioner's conduct demonstrated a callous disregard for law and warranted the punishment imposed. The determination should be confirmed and the petition dismissed.

There is no suggestion from any source that the Federal agent, mentioned in the majority opinion, did not act in accordance with the proper performance of his duties. He reported the attempted bribe to his superiors and the prosecution followed.

MARKEWICH and NUNEZ, JJ., concur with McGIVERN, J.; TILZER, J., dissents in opinion in which CAPOZZOLI, J. P., concurs.

Determination of respondent modified, on the law and in the exercise of discretion, so as to mitigate the punishment from cancellation to suspension and, as so modified, the matter is remitted to the Authority for reconsideration and the imposition of a lesser penalty, and otherwise confirmed, without costs and without disbursements.